UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ANDRE VYSEDSKIY,<br>    Plaintiff,<br><br>v.<br><br>ONSHIFT, INC, ET AL.<br>    Defendants. | C.A. No. 16-12161-MLW |

MEMORANDUM AND ORDER

WOLF, D.J.                                                September 29, 2017

I.   INTRODUCTION

Plaintiff Andre Vysedskiy alleges that he received unsolicited telephone calls from defendant OnShift, Inc.'s ("OnShift's") software, in violation of the Telephone Consumer Protection Act, 476 U.S.C. §227, et seq. (the "TCPA"). On October 25, 2016, he filed this case against OnShift and ten unidentified "Doe" defendants, OnShift's customers who purchased the software and "may be responsible for the calls placed to plaintiff." Compl. at ¶5. OnShift moves to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2) or, in the alternative, to transfer the case to the Northern District of Ohio pursuant to 28 U.S.C. §1404(a).

As explained below, plaintiff has not established that OnShift has the "minimum contacts" with Massachusetts necessary to

exercise personal jurisdiction over it. However, plaintiff's allegations, coupled with the affidavits submitted in connection with the motion to dismiss, support a colorable claim that jurisdiction exists. Therefore, the court is denying the motion without prejudice to a renewed motion after limited discovery concerning the issue of specific personal jurisdiction.

II. LEGAL STANDARDS

A. MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

When the court's personal jurisdiction over a defendant is challenged, the plaintiff bears the burden to establish that jurisdiction exists. See Adams v. Adams, 601 F.3d 1, 4 (1st Cir. 2010). Three methods exist for determining whether the plaintiff has met its burden at the motion to dismiss stage. See Foster-Miller, Inc. v. Babcock & Wilcox Canada, 46 F.3d 138, 145 (1st Cir. 1995). The "prima facie" method is most appropriate in cases in which the parties have not presented conflicting versions of the facts. See Nowak v. Tak How Investments, Ltd., 94 F.3d 708, 712 (1st Cir. 1996).

To make a prima facie showing of jurisdiction, the plaintiff "cannot rest upon the pleadings but is obliged to adduce evidence of specific facts." Foster-Miller, 46 F. 3d at 145; Boit v. Gar-Tec Products, Inc., 967 F.2d 671, 675 (1st Cir. 1992)("[P]laintiffs may not rely on unsupported allegations in their pleadings to make a prima facie showing of personal jurisdiction."). The court must

"consider...whether the plaintiff has proffered evidence that, if credited, is enough to support findings of all facts essential to personal jurisdiction." Foster-Miller, 46 F.3d at 145. The court accepts the plaintiff's proffered and properly documented facts as true "irrespective of whether the defendant disputes them, and in so doing, construe[s] them in the light most congenial to the plaintiff's jurisdictional claim." Adelson v. Hananel, 510 F.3d 43, 48 (1st Cir. 2007). "Those facts put forward by the defendant become part of the mix only to the extent that they are uncontradicted." Id.

The prima facie method "offers little assistance in closer, harder-to-call cases, particularly those that feature conflicting versions of the facts." Foster-Miller, 46 F.3d at 145. Where it is inappropriate to use the prima facie standard, courts may use the "preponderance standard" or the "likelihood standard." See Foster-Miller, 46 F.3d at 145-47. In using the preponderance standard, a court conducts fact-finding "in the traditional way, taking evidence and measuring the plaintiff's jurisdictional showing against a preponderance-of-the-evidence standard." Foster-Miller, 46 F.3d at 145. The "likelihood standard" is an intermediate standard. See Boit, 967 F.2d at 677. In applying this standard, a court conducts an evidentiary hearing and weighs the evidence but makes findings limited to "whether the plaintiff has shown a likelihood of the existence of each fact necessary to

3

support personal jurisdiction." Id.; see Foster-Miller, 46 F.3d at 146. In contrast, when the court "applies the prima facie standard and denies the motion to dismiss, it is implicitly, if not explicitly, ordering 'that hearing and determination [of the motion to dismiss] be deferred until the trial.'" Boit, 967 F. 2d at 676.

B. JURISDICTIONAL DISCOVERY

"A diligent plaintiff who sues an out-of-state corporation and who makes out a colorable case for the existence of in personam jurisdiction may...be entitled to a modicum of jurisdictional discovery if the corporation interposes a jurisdictional defense." United States v. Swiss Am. Bank, Ltd., 274 F.3d 610, 625 (1st Cir. 2001). The "diligence" prong "includes the obligation to present facts to the court which show why jurisdiction would be found if discovery were permitted." Id. at 626. The "colorable" standard requires some showing that discovery is needed or likely to be useful. See Dynamic Image Techs., Inc. v. United States, 221 F.3d 34, 38 (1st Cir.2000). However, "even when the plaintiff has been diligent and has made a colorable claim for personal jurisdiction, the district court still has broad discretion to decide whether discovery is required." Swiss Am. Bank, 274 F.3d at 625-26. Nevertheless, "courts generally will grant jurisdictional discovery if the plaintiff can show that the factual record is at least ambiguous or unclear on the jurisdiction issue." In re

4

*Testosterone Replacement Therapy Prod. Liab. Litig. Coordinated Pretrial Proceedings*, 136 F. Supp. 3d 968, 973 (N.D. Ill. 2015)

C. PERSONAL JURISDICTION

A federal district court may exercise personal jurisdiction over non-resident defendants to the same extent as a state court in the state in which the district court is located. See *Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A.*, 290 F. 3d 42, 51 (1st Cir. 2002). Massachusetts courts have personal jurisdiction over non-residents only if jurisdiction comports with Due Process and is permitted by a Massachusetts statute, such as the long-arm statute, Mass. Gen. Laws Chapter 223A, §3. See *Bulldog Investors Gen. P'ship v. Sec'y of the Commonwealth*, 457 Mass. 210, 215 (2010).

The First Circuit recently stated that "the Massachusetts long-arm statute might impose more restrictive limits on the exercise of personal jurisdiction than does the Constitution," *Copia Communications, LLC v. AMResorts, L.P.*, 812 F. 3d 1, 4 (1st Cir. 2016).[1] Among other things, Mass. Gen. Laws Chapter 223A, §3 authorizes personal jurisdiction over "a person, who acts directly

---

[1] The First Circuit has not reconciled this suggestion with the Supreme Judicial Court's statement that the statute is "an assertion of jurisdiction over the person to the limits allowed by the Constitution of the United States." *Daynard*, 290 F. 3d at 52 (quoting *Automatic Sprinkler Corp. of am. V. Seneca Foods Corp.*, 361 Mass. 441 (1972)).

or by an agent, as to a cause of action...arising from the persons...transacting any business in [Massachusetts]." For jurisdiction to exist under this portion of the Massachusetts statute, "the facts must satisfy two requirements--the defendant must have transacted business in Massachusetts, and the plaintiff's claim must have arisen from the transaction of business by the defendant." Tatro v. Manor Care, Inc., 416 Mass. 763, 769-71 (1994); see also Evans Cabinet Corp. v. Kitchen Int'l, Inc., 593 F.3d 135, 146 (1st Cir. 2010).

"The Due Process Clause of the Fourteenth Amendment requires that a defendant have certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." Baskin-Robbins Franchising LLC v. Alpenrose Dairy, Inc., 825 F. 3d 28, 35 (1st Cir. 2016)(quoting International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)). This requirement "protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful 'contacts, ties, or relations.'" Burger King Corp. v. Rudzewicz, 471 U.S. 462, 471-72 (1985)(citing Int'l Shoe, 326 U.S. at 319). "By requiring that individuals have 'fair warning that a particular activity may subject [them] to the jurisdiction of a foreign sovereign,' the Due Process Clause 'gives a degree of predictability to the legal system that allows potential

defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit.'" Id. (citing Shaffer v. Heitner, 433 U.S. 186, 218 (1977); World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980)). Consistent with these principles, a court may only exercise jurisdiction over a defendant whose "conduct and connection with the forum State" are "such that [the defendant] should reasonably anticipate being haled into court there." World-Wide Volkswagen, 444 U.S. at 297.

"[A] federal district court may exercise either general or specific jurisdiction over a defendant." Baskin-Robbins, 825 F. 3d at 35. A court has general, or "all-purpose," personal jurisdiction over an out-of-state defendant whose "affiliations with the forum state are so continuous and systematic as to render [the defendant] essentially at home" in that state, such that it may reasonably expect to be required to answer any claim in that forum. Daimler AG v. Bauman, 134 S. Ct. 746, 761 (2014); see also Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 919 (2011).

Specific jurisdiction, on the other hand, depends on the connection between the defendant, the forum, and the underlying controversy. It may be exercised only when three conditions are satisfied:

> First, the claim underlying the litigation must directly arise out of, or relate to, the defendant's forum-state activities. Second, the defendant's in-state contacts

7

must represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making the defendant's involuntary presence before the state's courts foreseeable. Third, the exercise of jurisdiction must...be reasonable.

Copia, 812 F. 3d at 4 (quoting Phillips v. Prairie Eye Ctr., 530 F.3d 22, 27 (1st Cir.2008)).

The "purposeful availment" requirement "represents a rough quid pro quo: when a defendant deliberately targets its behavior toward the society or economy of a particular forum, the forum should have the power to subject the defendant to judgment regarding that behavior." Carreras v. PMG Collins, LLC, 660 F.3d 549, 555 (1st Cir.2011). "The cornerstones of this inquiry are voluntariness and foreseeability." C.W. Downer & Co. v. Bioriginal Food & Sci. Corp., 771 F.3d 59, 66 (1st Cir. 2014). The court must determine whether the defendant "'deliberately' has engaged in significant activities within a state...or has created 'continuing obligations' between himself and residents of the forum," such that "he manifestly has availed himself of the privilege of conducting business" in the state and "shielded" himself with the "benefits and protections of the forum's laws." Burger King, 471 U.S. at 474-75. His interactions with in-state residents "must be voluntary and not based on the unilateral actions of another party." Adelson, 510 F.3d at 50; see also World-Wide Volkswagen, 444 U.S. at 298. Moreover, they cannot be so "'[r]andom,'

8

'fortuitous,' or 'attenuated'" that the defendant could not foresee litigation in the forum. Burger King, 471 U.S. at 475.

To satisfy the "relatedness" prong, "there must be more than just an attenuated connection between the contacts and the claim; the defendant's in-state conduct must form an important, or [at least] material, element of proof in the plaintiff's case." Phillips, 530 F. 3d at 27. This means that the defendant's in-forum conduct must be at least the but-for cause of the plaintiff's injury, and the conduct's connection to the plaintiff's claim may not be too "attenuated or indirect." Harlow v. Children's Hospital, 432 F. 3d 50, 60-61 (1st Cir. 2005).

III. FACTS

OnShift, an Ohio corporation with its principle place of business in Clevehand, Ohio, produces and sells software to hospitals, nursing homes, and other healthcare providers to assist in hiring employees and scheduling shifts. See Decl. of Mark Woodka at ¶¶4, 12. OnShift submitted an affidavit from its Chief Executive Officer, Mark Woodka, describing how the software works. Customers upload employees data, including preferred dates and times for working open shifts. Id. at ¶13. The software then matches open shifts with employees who have expressed preferences for particular dates and times. Id. at ¶14. The customer can contact employees directly through the software with a text message or telephone call. Id. at ¶15. To send a message, the customer must

select a list of employees from the database and input a command that sends the text message or initiates the telephone call to that list of employees. Id. at ¶16. Customers can send pre-recorded messages through the software that state that the call is "from OnShift." Decl. of Andrey Vyshedskiy ("Vyshedskiy Decl.") at 3. However, OnShift does not initiate messages or calls except in response to a selection and command from the customer, through its automated software. Woodka Decl. at ¶¶16-17.

Approximately five percent of OnShift's customers are based in Massachusetts. Id. at ¶21. However, there is no evidence that OnShift has any other connection to the state. OnShift does not have any offices or stores in Massachusetts, id. at ¶6, does not own or lease property in Massachusetts, id. at ¶8, does not maintain any telephone lines in Massachusetts, id. at ¶9, and does not have an agent for service of process in the state, id. at ¶7. OnShift's employees do not travel to Massachusetts to sell the software. Id. at ¶10. Moreover, OnShift does not send solicitations to Massachusetts residents or otherwise advertise in Massachusetts. Id. at ¶11. OnShift collects information on potential customers "when those potential customers provide OnShift with their email addresses, phone numbers, and/or contact information: (i) in-person at tradeshows or events; (ii) via webinars; and/or (iii) by submitting said information on OnShift's

website." Id. at ¶22. However, there is no evidence concerning how OnShift's Massachusetts customers purchased the software.

The court may rely on OnShift's affidavit because the plaintiff has not offered evidence to contradict it. See Adelson, 510 F.3d at 48 ("Those facts put forward by the defendant become part of the mix ...to the extent that they are uncontradicted."); see also Foster-Miller, 46 F. 3d at 145 (stating that to make a prima facie showing of jurisdiction, the plaintiff "cannot rest upon the pleadings but is obliged to adduce evidence of specific facts"). Plaintiff's statement that the voice recording stated that the calls were "from OnShift," "Vyshedskiy Decl." at 3, which is also the name of the software, is consistent with OnShift's statement that the software, operated by customers, called the plaintiff. It is also consistent with the complaint, which alleges that "OnShift at all times acted by and through" the "customers who purchas[ed] and/or licensed OnShift's software." Compl. at ¶5-6.[2]

---

[2] The complaint refers to the customers as OnShift's "agents," but plaintiff has not argued in connection with the motion to dismiss that the customers share an agency relationship with OnShift, or that the customer's actions in Massachusetts may be attributed to OnShift for jurisdictional purposes under Daynard, 290 F. 3d at 53-60. Such issues "adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990).

Plaintiff, a Massachusetts resident, alleges receiving pre-recorded voice calls from defendant on his cellular telephone, in violation of the TCPA, 47 U.S.C. §227(b)(1). Vyshedskiy Decl. ¶¶1-2. Plaintiff received these calls while located within Massachusetts, at his telephone number beginning with the numbers "617," a Massachusetts area code. Vyshedskiy Decl. ¶¶4-5, 8-10.

As indicated earlier, OnShift has moved to dismiss.

IV. ANALYSIS

Plaintiff has not presented a prima facie case for personal jurisdiction over OnShift. However, as explained below, the court finds that limited discovery on the issue is justified.

As an initial matter, plaintiff has not presented a colorable claim that OnShift is subject to general jurisdiction in Massachusetts. See Swiss Am. Bank, 274 F.3d at 626-27. OnShift is not incorporated in Massachusetts and has no offices or employees here. See Woodka Decl. at ¶¶4-6. Plaintiff has not alleged facts suggesting that discovery would produce evidence sufficient to show that OnShift's "affiliations with [Massachusetts] [that] are so continuous and systematic as to render [it] essentially at home" in the state. Daimler, 134 S. Ct. at 761. The fact that five percent of OnShift customers are in Massachusetts does not suffice. Id., at 761. "Even regularly occurring sales of a product in a State do not justify the exercise of jurisdiction over a claim unrelated to those sales." Goodyear, 131 S. Ct. at 2850, 2857 n.6.

Therefore, the court is denying plaintiff's request for discovery on the issue of general jurisdiction.

However, the facts support a colorable claim that the court has specific jurisdiction over OnShift. Therefore, it is appropriate to permit limited discovery to develop that claim. See Swiss Am. Bank, 274 F.3d at 625.

This case is distinguishable from those cited by the plaintiff, in which the defendants or their agents intentionally called telephone lines located in Massachusetts. See Jones v. Revenue Assistance Program, 2016 WL 3919843, at *6 (D. Mass. 2016)(Gorton, D.J.)("Plaintiff presents supported allegations that his claims arise from the commercial calls that [defendant] intentionally made to him in Massachusetts.")(emphasis added); Russel v. 29 Prime, Inc., 2014 WL 3510291, at *2-3 (D. Mass. 2014)(Gorton, D.J.)(finding personal jurisdiction based on defendants' calls to Massachusetts residents, which were placed through a corporate agent and solicited Massachusetts residents to purchase defendant's products). In this case, OnShift's customers, who are not OnShift's agents, made the decisions to call recipients such as plaintiff. See Woodka Decl. at ¶¶16-17. A customer's decision to use defendant's product in the forum state--even if foreseeable--does not, in itself, subject the manufacturer to personal jurisdiction in the state. See World-Wide Volkswagen, 444 U.S. at 298 ("[T]he mere unilateral activity of those who claim

some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State.").

Nevertheless, OnShift's conduct--in particular, the sales of its software to Massachusetts residents--may constitute a "purposeful availment" of Massachusetts' economy or the protection of its laws, such that the exercise of jurisdiction would be fundamentally fair.

When a product reaches the forum state through "the efforts of the manufacturer or distributor to serve, directly or indirectly, the market for its product" in that state, personal jurisdiction is proper when its product "has [] been the source of injury to its owner or to others." World-Wide Volkswagon, 444 U.S. at 297. In J. McIntyre Mach., Ltd. v. Nicastro, the Supreme Court held that the New Jersey state courts lacked personal jurisdiction over the foreign manufacturer of a metal-shearing machine that injured the plaintiff while he was using it in New Jersey even though the defendant could have foreseen that customers would use some of its machines in New Jersey. See 564 U.S. 873, 886 (2011). The plurality, focusing on the defendant's intent, held that "the defendant's transmission of goods permits the exercise of jurisdiction only where the defendant can be said to have targeted the forum; as a general rule, it is not enough that the defendant might have predicted that its goods will reach the forum State." Id. at 882. It reasoned that because the "defendant d[id] not have

a single contact with New Jersey short of the machine in question ending up in this state," it did not purposefully "target" the New Jersey market in a way that "manifest[ed] an intention to submit" to New Jersey's authority. See id. at 882, 886.

Justices Stephen Breyer and Samuel Alito rejected the plurality's strict focus on the defendant's intent in favor of a more expansive "notion of defendant-focused fairness." Id. at 890-91. Nevertheless, they concurred because there was "no regular...flow or regular course of sales in New Jersey; and there [was] no something more, such as special state-related design, advertising, advice, marketing," or any other "specific effort by the British manufacturer to sell in New Jersey." Id. at 889. However, they agreed that "a producer is [not] subject to jurisdiction for a products-liability action" merely because it "knows or reasonably should know that its products are distributed through a nationwide distribution system that might lead to those products being sold in any of the fifty states." Id. at 891.

Justice Breyer's opinion, which found the district court's decicion to be correct on the narrowest grounds, constitutes the holding of J. McIntyre. See Marks v. United States, 430 U.S. 188, 193, 97 S. Ct. 990, 993, 51 L. Ed. 2d 260 (1977)("When a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, the holding of the Court may

be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds.").

In this case, there is no direct evidence of any "specific effort" by OnShift to sell its product in Massachusetts, such as advertising or solicitations directed to Massachusetts residents. See J. McIntyre, 564 U.S. at 889 (Breyer, J. concurring). OnShift's declaration states that five percent of OnShift's customers reside in Massachusetts, generating 3.5 percent of OnShift's total revenue in 2015. See Woodka Decl. at ¶21. However, there is no evidence of how OnShift's Massachusetts customers purchased the software or whether OnShift knew that the customers lived in Massachusetts when it sold them the product. There is also no evidence of the total number of customers who reside in Massachusetts or the total revenue OnShift derives from those customers.

Without this information, the court cannot conclude that OnShift has "deliberately target[ed] its behavior toward the society or economy of [Massachusetts]" in a way that "purposefully availed" itself of the protection of its laws. Carreras, 660 F.3d at 555; see also In re Testosterone Replacement Therapy, 136 F. Supp. 3d at 975 (holding that determining whether [defendant] can be properly haled into this Court would require more information about, for example, the volume of [defendant's product's] sales or revenue derived in particular states, or the underlying basis for

[defendant]'s expectations about the consequences its acts would have in those states").

However, in view of the facts that one in every twenty OnShift customers lives in Massachusetts, that OnShift obtains information about its customers in various ways, see Woodka Decl. at ¶22, and that some customers contact OnShift with questions after buying the software, see id. at ¶23, the court finds that limited discovery may reveal that OnShift knew that a substantial number of those customers lived in Massachusetts when it sold them the software. There is also a "colorable" showing that there was a "regular...flow or regular course of sales" to the state. J. McIntyre, 564 U.S. at 889. At a minimum, plaintiffs have shown that the factual record on the jurisdiction issue "is at least ambiguous or unclear" as to whether specific personal jurisdiction exists. In re Testosterone Replacement Therapy, 136 F. Supp. 3d at 976. In addition, "plaintiffs cannot be expected to possess this information without conducting discovery." Id.

Moreover, OnShift's software is used by healthcare companies to contact their employees, many of whom are likely to reside in the same state as the employer. See Woodka at ¶¶4, 12. As a result, it plausible to conclude that many of OnShift's customers initiate calls to Massachusetts numbers. If, as discovery may reveal, there are a substantial number of employers based on Massachusetts who use OnShift's software, it is plausible that the calls plaintiff

received originated from Massachusetts customers and, therefore, that plaintiff's injuries "arise out of" sales to those customers. Copia, 812 F. 3d at 4.

Accordingly, plaintiff has stated a colorable claim that the court has specific personal jurisdiction over OnShift. Therefore, the court is ordering the parties to conduct discovery on the limited issue of whether OnShift has the "minimum contacts" with Massachusetts required to establish specific personal jurisdiction. The plaintiff may seek, for example, information concerning the circumstances surrounding OnShift's sales of its software to Massachusetts residents, the volume of such sales, and the revenue derived from those sales.[3] He may, in addition, seek information concerning the mechanism by which OnShift's software made the calls that plaintiff allegedly received, and whether any such calls were initiated by OnShift's Massachusetts-based customers, by OnShift's employees, or from parties located in other states.

---

[3] If discovery reveals that OnShift sells its software over the internet, the parties should address, in the memoranda filed in connection with any renewed motion to dismiss, whether such sales provide a basis for exercising personal jurisdiction under the principles discussed in McBee v. Delica Co., 417 F.3d 107, 124 (1st Cir.2005), Jennings v. AC Hydraulic A/S, 383 F.3d 546, 549 (7th Cir. 2004), Zippo Mfg. Co. v. Zippo Dot Com, Inc., 952 F. Supp. 1119, 1124-26 (W.D. Pa. 1997), and Toytrackerz LLC v. Koehler, 2009 WL 1505705, at *7-8 (D. Kan. May 28, 2009), for example.

V. ORDER

In view of the foregoing, it is hereby ORDERED that:

1. The Motion to Dismiss for Lack of Jurisdiction (Docket No. 8) is DENIED without prejudice.

2. The parties shall, by December 15, 2017, conduct discovery limited to the issue of whether the court may exercise specific personal jurisdiction over OnShift.

3. Defendant shall, by January 15, 2018, file any renewed motion to dismiss for lack of personal jurisdiction.

4. The plaintiff shall respond by February 15, 2018.

5. Defendant shall file any reply by March 2, 2018.

6. If necessary, a hearing on a renewed motion to dismiss will be held on March 29, 2018.

/s/ Charles P. Kocoras
UNITED STATES DISTRICT JUDGE